E. A. GRUNDEEN, doing business as Northwest Piano Company, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Appellee.

Harry L. McFALL, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Appellee.

Nos. 15555, 15556.

United States Court of Appeals Eighth Circuit.

Dec. 4, 1956.

Robert W. Palda, Minot, N. D. (Palda, Palda & Peterson, Minot, N. D., were on the brief), for appellant E. A. Grundeen, doing business as Northwest Piano Co.

Joseph J. Funke, Minot, N. D., for appellant Harry L. McFall.

Mart R. Vogel, Fargo, N. D. (Wattam, Vogel, Vogel, Bright ¨ Peterson, Fargo, N. D., McGee & Van Sickle, and Richard H. McGee, Minot, N. D., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.

SANBORN, Circuit Judge.

The appellants, who were defendants in the District Court, ask for the reversal of a declaratory judgment determining that a policy of automobile liability insurance issued by the United States Fidelity and Guaranty Company to E. A. Grundeen (under the name "Northwest Piano Company") upon his 1948 Dodge one-ton truck did not cover an accident which occurred near Leeds, North Dakota, on October 11, 1954, when an Oldsmobile automobile, owned and being driven by Harry L. McFall, a salesman for Grundeen, collided with a Ford automobile of Andrew Summers, injuring its three occupants, two of whom brought personal injury suits in the State court against both McFall and Grundeen.

The facts, which are not in dispute, are accurately stated in detail in the opinion of the District Court, 138 F. Supp. 498, and need not be repeated.

At the time of the collision, Grundeen was engaged in the business of dealing in musical and band instruments, and had a store and a warehouse at Minot, North Dakota. McFall had been employed by him as a salesman for approximately ten years. Grundeen maintained and operated eight motor vehicles, including the Dodge truck, for use in his business at Minot. All of these vehicles were covered by liability insurance.

McFall, prior to October 11, 1954, had made an appointment to meet with the Band Director of the public school at Esmond, North Dakota, with respect to selling band instruments. Esmond is about 125 miles from Minot. McFall, on the morning of October 11, drove his Oldsmobile to the Grundeen store in Minot, picked up some band instruments, drove to the warehouse, about a mile from the store, transferred the instru-

ments to the Dodge truck, and tried to start the truck, but could not keep its motor running. He made no attempt to notify Grundeen that the truck would not operate, or to get a mechanic to fix it, or to obtain the use of another Grundeen vehicle. McFall re-transferred the band instruments from the Dodge truck to his Oldsmobile, and, without the knowledge or permission of Grundeen, started on his trip to Esmond, North Dakota.

The policy in suit, covering against liability arising out of the use of the 1948 Dodge truck, contained the following provisions, which the appellants contend bring the use of the Oldsmobile of McFall and his collision within the coverage of the policy:

"Insuring Agreements.

\* \* \* \* \* \*

"III. Definition of Insured— With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the Named Insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission.
\* \* \*

\* \* \* \* \* \*

"IV. Automobile Defined.
\* \* \*—

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile—the motor vehicle or trailer described in this policy;

\* \* \* \* \* \*

"(3) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the Named Insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; \* \* \* "

The contentions of the appellants were and are, in substance, that, since McFall concededly had implied authority to go to Esmond on Grundeen's business and had Grundeen's permission to use the Dodge truck in so doing, he (McFall) became an insured with respect to the use of that vehicle, and, since it was inoperable on the morning of October 11, 1954, the use of his own Oldsmobile, in lieu of the truck, made his car a "temporary substitute automobile" within the meaning of the policy and made him an insured, regardless of the fact that the substitution of his car for the truck and the actual use of his car was without the knowledge or permission or authority of Grundeen.

The conclusion reached by the District Judge is stated in his opinion as follows, at page 503 of 138 F.Supp.:

"It clearly appears to this Court that McFall, at the time of the accident, did not come within the definition of 'Insured' under Insuring Agreement III of the policy, for the reason that the actual use of his Oldsmobile automobile at that time was without Grundeen's permission. Stripped of nonessential words, the Court reads Insuring Agreement III, as it applies to the facts herein, as follows:

" 'With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word "Insured" includes the Named Insured (Grundeen) and also includes any person (McFall) while using the automobile (Dodge truck, or automobile temporarily substituted therefor under the conditions specified in agreement IV(a) (3)) and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the Named Insured (Grundeen) or with his permission.*
\* \* \* ' (Emphasis supplied.)
The term 'the automobile' means the vehicle specifically described in the policy (Dodge truck) or the vehicle temporarily substituted therefor

(under the said specified conditions), but if either the vehicle described in the policy (Dodge truck) or such vehicle so temporarily substituted therefor is used by any person other than the named insured, such use must be with the latter's permission."

The burden of demonstrating error is, of course, upon the appellants. See Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741. They concede that there are no pertinent authorities relating to the exact question here involved, the nearest approach being Tanner v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 6 Cir., 226 F.2d 498, which lends no support to their contentions. The policy in suit is a North Dakota contract and is governed by the laws of that state, and has been construed by an experienced local federal judge. The appellants can not demonstrate, nor can we, that the conclusion reached by the trial judge as to the proper construction of the pertinent language of the policy in suit is irrational, illogical, unsound or contrary to any local or general rule of law applicable to the interpretation of insurance contracts.

This Court has repeatedly and consistently said that, in reviewing doubtful questions of local law, it would not adopt views contrary to those of the trial judge, unless convinced that his views were erroneous. See and compare, Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Globe Indemnity Co. v. Wolcott & Lincoln, Inc., 8 Cir., 152 F.2d 545, 547; Buder v. Becker, 8 Cir., 185 F.2d 311, 315 and cases cited; Citizens Insurance Co. of N. J. v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643.

Moreover, we are satisfied that, under the evidence, McFall's automobile was not a "Temporary Substitute Automobile" within the meaning of the policy in suit. McFall had no authority to withdraw any of Grundeen's motor vehicles from "normal use" without Grundeen's consent. There was no such emergency confronting McFall as would necessitate the substitution of his car for the Dodge truck without notice to Grundeen. While it is regrettable that Grundeen lost his liability coverage because of McFall's unauthorized use of his own car in connection with Grundeen's business, we can not expand the coverage of the policy in suit beyond its terms.

The judgment appealed from is Affirmed.

JOHNSEN, Circuit Judge (concurring separately).

The parties, in mutual construction and binding concession, have presented the case, both below and here, as involving only a consideration of Insuring Agreements III and IV, and not a consideration of Insuring Agreement V, entitled "Use of Other Automobiles". In this posture, I agree that the judgment of the trial court can properly be affirmed.